## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ONELIVE LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 1:20-cv-00954** |
| **PITNEY BOWES INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff OneLive LLC d/b/a One Live Media ("OneLive") files this Original Complaint against Defendant Pitney Bowes, Inc. ("Pitney Bowes") alleging claims for breach of contract, promissory estoppel, and quantum meruit. These theories of liability are based on largely the same set of facts, namely Pitney Bowes' refusal to abide by and, ultimately, breach its obligation to pay OneLive for the value of discounted postage fees made available by OneLive to Pitney Bowes for use in Pitney Bowe's shipping business. OneLive obtained these discounted postage rates, which it supplied as part of services to business partners like Pitney Bowes, through an agreement it negotiated with the United States Postal Service ("US Postal") known as an NSA. Pitney Bowes, however, has no legitimate basis to shirk its duty to pay for the discounted postage rates in accordance with the plain the language and structure of the Shipping APIs Fee Agreement between the Pitney Bowes and OneLive, effective June 18, 2018 (the "Fee Agreement").

Rather than compensate a local business like OneLive for the services it provided under the Fee Agreement, Pitney Bowes has sought to use its multi-billion dollar shipping enterprise to bully OneLive in the hopes on intimidating it into walking away from money it is rightfully owed.

Revealing its true purpose to avoid its contractual duties, Pitney Bowes has proffered non-sensical interpretations of the Fee Agreement, including the deeply flawed proposition that the contract allegedly places no payment obligation on Pitney Bowes—in other words, that Pitney Bowes can avail itself of the discounted postage rates provided by OneLive *but somehow does not have to pay for them*. The argument is even more remarkable given that Pitney Bowes acknowledged those duties and obligation—consistent with the intent of the parties—*by paying OneLive for the same discounted postage rates for over a year*, up until it unilaterally breached the Fee Agreement. The law does not abide such sophistry, especially where the *only* consideration Pitney Bowes provides under the Fee Agreement is the obligation to pay for discounted postage rates. Simply put, there is no have-your-cake-and-eat-it-too defense in contract law that could excuse Pitney Bowes' conduct.

In addition, emails between OneLive and Pitney Bowes further evince the intent of the parties when entering the Fee Agreement. These exchanges demonstrate that multiple individuals at Pitney Bowes responsible for approving and making payments on contracts authorized payment of the discounted postage rates, as set forth in the Fee Agreement. Nor should that come as a surprise, as the Fee Agreement's structure is customary industry practice. In fact, two of Pitney Bowes' direct competitors entered into similar agreements to the Fee Agreement with OneLive.[1] In short, the evidence points to the inescapable conclusion that the parties intended for Pitney Bowes to pay OneLive for the services it rendered under the Fee Agreement and, therefore, Pitney Bowes must pay for the over $400,000 in unpaid discounted postage rates it used pursuant Fee Agreement.

---

[1] Allegations in the Original Complaint concerning OneLive are based on personal information as to OneLive's own actions and others, and on information and belief as to all other matters.

## I.        THE PARTIES

1.        Plaintiff OneLive provides innovative solutions for its customers in the shipping and e-commerce businesses.  The company's principle place of business is 410 Baylor Street, Suite B, Austin, Texas, 78703.  OneLive is a limited liability corporation duly organized under the laws of the State of Texas.

2.        Pitney Bowes is a world-wide leader in business shipping and related services, including domestic and international shipping, customer information management, and e-commerce and support services, among other things.  In 2016, Pitney Bowes provided mailing and shipping services to approximately 1 million customers in around 100 countries over the globe.  In 2019, it earned revenues of approximately $3.2 billion dollars.   Pitney Bowes' corporate headquarters is in Stamford, Connecticut.  The company is incorporated under the laws of the State of Delaware.  Pitney Bowe's registered agent for process in Texas is CT Corp System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.        VENUE & JURISDICTION

3.        Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.  OneLive preformed a significant portion, if not all, of its obligations under the Fee Agreement in this District and received partial compensation in this District from Pitney Bowes' for its correlative obligation to pay for the discounted postage rates to OneLive.  In addition, multiple witnesses from both parties concerning the nature of the Fee Agreement and the course of the parties' performance therewith are located in this District.  Specifically, Pitney Bowes conducted business in the State of Texas in connection with the facts of this case and as a general matter.  For these reasons, the Court likewise has personal jurisdiction over Pitney Bowes.

4.      The federal diversity jurisdiction statute provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different States."  28 U.S.C. § 1332.  For purposes of determining the state(s) of residence when evaluating the presence of diversity jurisdiction, Pitney Bowes maintains its corporate headquarters at 3001 Summer Street, Stamford, Connecticut, 06926 and is incorporated in the State of Delaware.  OneLive is a limited liability corporation incorporated under the laws of the State of Texas, and maintains its corporate headquarters at 410 Baylor St, Suite B, Austin, Texas 78703.  In addition, OneLive alleges damages in the amount of at least $461,000.00.  Diversity jurisdiction therefore exists

## III.      FACTUAL BACKGROUND

**B.      The Fee Agreement and Its Nature and Purpose.**

5.      As part of its business, OneLive entered into a negotiated service agreement ("NSA") with U.S. Postal.  According to US Postal, an NSA "is a customized and mutually beneficial contractual agreement between [U.S. Postal] and a specific mailer" that "provides, prices, and classifications under the terms and conditions established in the NSA and may include modifications to current mailing standards and other postal requirements."[2]  OneLive entered into a NSA with U.S. Postal that was operative for the entire relevant time period and granted, among other things, the right for OneLive to use and provide to others, such as Pitney Bowes, discounted postage rates.

6.      Effective June 18, 2018, Pitney Bowes and OneLive entered into the Fee Agreement.  As set forth in the Fee Agreement, "the parties agree that [OneLive] aggregates certain technology services and tools to provide their customers" and that the parties "are entering into

---

[2] https://pe.usps.com/text/dmm300/709.htm

[the Fee Agreement] solely so that [OneLive] can provide a solution, including the PBI Service," to its "customer[s], Big Commerce," and their own customers, collectively "End Users." The PBI Service is a digital service used by companies in the shipping industry to "solve shipping issues simply and efficiently."[3] In other words, OneLive brought Big Commerce and Big Commerce's customers to Pitney Bowes.

7.      Section 2 of the Fee Agreement contains a "Postage Model" concerning the services that OneLive would perform relating to shipping transactions for customers with the PBI Service. Among other things, OneLive agreed to "establish, fund and manage a single account for postage with [Pitney Bowes]," from which Pitney Bowes could avail itself of the *discounted postage rates* that One Live had negotiated with U.S. Postal pursuant to the NSA. In addition, OneLive agreed to provide shipper and other end user information "reasonably required for [Pitney Bowes] to provide the [PBI Services]." The Postage Model also designated OneLive "responsible for all processing of the bulk postage account for all "End User[s]."

8.      Consistent with the development of the Postage Model, Section 3 of the Fee Agreement, entitled "Postage Rates," gave Pitney Bowes the corollary obligation to compensate OneLive for the amount of the discounted postage that it had used pursuant to the agreement. Section 3 expressly guaranteed Pitney Bowes access to the discounted postage rates and provided that it may "offer the rates to your clients, including but not limited to[,]" the right "to exception pricing approval" and the ability of "direct engagement with end users" concerning the discounted rates.

---

[3] https://www.pitneybowes.com/us/developer/shipping-apis.html

**C.      The Parties Course of Dealing.**

9.      Consistent with the parties' intention for Pitney Bowe's to have a correlative duty to pay OneLive for the amount of money in discounted postage rates that it used, since the inception of the Fee Agreement on June 18, 2018, Pitney Bowes has incurred hundreds of thousands, if not millions, of dollars in discounted postage rates for which it subsequently paid to OneLive.

10.      However, during the fourth quarter of 2019 and the first quarter of 2020, Pitney Bowes stopped remitting payments to OneLive for use of the discounted postage rates, which it nonetheless continued to use.  As a result, Pitney Bowes committed a material breach of the Fee Agreement. The amounts owed were not discovered by OneLive until a subsequent auditing process.

11.      Upon discovery, in May 2020 OneLive inquired with Pitney Bowes and requested they live up to their obligation to pay for the discounted postage rates.  In response, Pitney Bowes, in accordance with the intent of the parties, demonstrated that it understood it was obligated to compensate OneLive for those rates.  Pitney Bowes Director of Strategic Partner Development, Mr. Bruce Beatty, stated that "[f]inance has calculated *the payment due and are in the process of gathering the approvals for payment*."  On June 10 and June 16, 2020, OneLive again specifically raised the payment shortfalls for Q4 2019 and Q1 2020.  Once more confirming that Pitney Bowe's owed OneLive for the services it provided—*i.e.*, the discounted postage rates—under the Fee Agreement, Mr. Beatty did not disclaim any obligation to pay or state that approvals were not obtained because of some alleged flaw in OneLive's performance.  Instead, he indicated that payment was forthcoming, although "held up in beurocracy [*sic*]," promising that "someone will reach out shortly."

6

**D.**    **The Prevalence of Fee Agreements in the Marketplace.**

12.    The type of agreement discussed herein is common in the relevant marketplace. For instance, OneLive has maintained agreements with two of Pitney Bowe's direct competitors in the shipping marketplace—EasyPost and Stamps.com.  In both of those agreements, OneLive utilized those companies' PC Postage services to process OneLive's NSA rates.  Both EasyPost and Stamps.com consistently paid OneLive for their PC Postage processing of the discounted postage rates per the NSA.

## IV.    <u>CLAIMS FOR RELIEF</u>

**A.**    **Count I: Breach of Contract Against Pitney Bowes**

13.    The Fee Agreement represents an enforceable contract.  To facilitate the expansion of the PBI Service, OneLive provided consideration by developing the Postage Model and, relatedly, by providing Pitney Bowes with right to participate with customers, including the BigCommerce partnership, for discounted postage rates that OneLive had negotiated with U.S. Postal.  The contract provided Pitney Bowes with the corollary obligation and consideration to pay for the discounted postage rates it used.  Accordingly, the contract has the necessary mutuality of obligation required to be enforceable.

14.    OneLive is a proper party to bring a breach of contract action because it is the signatory on the contract.

15.    During the duration of the contract, OneLive performed its obligations, tendered performance of, or was excused from performing its contractual obligations, including with respect to the Postage Model and the provision of discounted postage rates.

16.    Pitney Bowes breached the Fee Agreement some time in Q4 2019 and thereafter when it stopped compensating, and continued not to compensate, OneLive for the discounted postage rates it utilized pursuant to the NSA between OneLive and U.S. Postal.

17. Pitney Bowe's breach of the Fee Agreement has caused OneLive injury and damages in an amount of at least $461,000.00, representing unpaid discounted postage rates.

**B.      Count II: Promissory Estoppel Against Pitney Bowes (In The Alternative)**

18. In the alternative to its breach of contract claim, OneLive asserts a cause of action against Pitney Bowes for promissory estoppel.

19. Pitney Bowe's made a promise to pay OneLive for its use of the discounted postage rates that OneLive had negotiated pursuant to a separate agreement with U.S. Postal.

20. OneLive reasonably and substantially relied on that promise. Among other things, absent that promise, OneLive would not have entered into the Fee Agreement because Pitney Bowes would not have had a corollary obligation to compensate OneLive for the services it provided under the Fee Agreement.

21. OneLive's reliance was foreseeable to Pitney Bowes because the type of promise made by Pitney Bowes is one that is routinely made by other shipping companies in the industry and relied on by companies like OneLive.

22. Ordering Pitney Bowe's to pay OneLive for the amount of discounted postage rates that it has refused to pay in keeping with its promise would be consistent with the ends of justice. Justice should not allow Pitney Bowes, one of the world's largest, multi-billion-dollar shipping magnets, to flex its financial muscle and unilaterally attempt to escape from the material promises it made to OneLive. Pitney Bowes has no cognizable excuse for its non-payment of the amounts owed.

**C.      Count III: Quantum Meruit Against Pitney Bowes**

23. In the alternative to its breach of contract claim, OneLive asserts a cause of action against Pitney Bowes for quantum meruit.

24.     One Live provided valuable services to Pitney Bowe's by developing the Postage Model and by allowing Pitney Bowes access to discounted postage rates OneLive had separately negotiated with U.S. Postal.  Pitney Bowe's accepted these services by utilizing them from June 18, 2018 and beyond the date it breached the Fee Agreement, using hundreds of thousands, if not millions, of dollars in discounted postage rates.

25.     Pitney Bowes had reasonable notice that One Live expected compensation for the services.  Pitney Bowes understood, based on industry practice, that companies with NSAs with U.S. Postal expect to be compensated when they offer their negotiated discounted postage rates to shipping companies like Pitney Bowes.

## V.      <u>DEMAND FOR JURY TRIAL</u>

18.     OneLive hereby demands a trial by jury on all issues of fact to which it is entitled to a jury trial in this action.

## VI.      <u>PRAYER</u>

19.     For all the foregoing reasons, the OneLive requests that the Court enter judgment in its favor and award it the following relief against Pitney Bowes:

- a.     damages in the amount no less than $461,000 and ultimately to be proven at trial
- b.     costs of court;
- c.     reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(1)-(5) & (8) and any other analogous statutes or provisions of law;
- d.     pre-judgment and post-judgment interest at the highest lawful rate; and
- e.     such other relief, at law or in equity, to which it may be justly entitled.

Dated: September 16, 2020

Respectfully submitted,

**MAYER LLP**

By: _____

Aaron Speer, Esq.
State Bar No. 24051365
aspeer@mayerllp.com
Jason C. McKenney, Esq.
Tex. Bar No. 24070145
jmckenney@mayerllp.com
(*application for admission pending*)
(*application for pro hac vice forthcoming*)
750 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
Telephone: (214) 379-6900
Facsimile: (214) 214-6939

**ATTORNEYS FOR PLAINTIFF
ONELIVE LLC**

## **CERTIFICATE OF SERVICE**

I, Aaron Speer, hereby certify that a copy of the foregoing Original Complaint has or will be served on Pitney Bowe's registered agent for the service of process in accordance with the Federal Rules of Civil Procedure and/or counsel for Pitney Bowes by electronic mail.

Aaron Speer, Esq.